# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nicholas L.,                                         Case No. 23-cv-1399 (TNL)

      Plaintiff,

v.                                                         **ORDER**

Martin J. O'Malley,[1]
Commissioner of Social Security
Administration,

      Defendant.

---

Jyotsna Asha Sharma, Disability Partners, PLLC, 2579 Hamline Ave. N., Suite C, Saint Paul, MN 55113, and Paul McGrath, Disability Partners, PLLC, 2579 Hamline Ave. N., Suite C, Saint Paul, MN 55113 (for Plaintiff);

Andrew M. Luger, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; Sophie Doroba, Social Security Administration, Office of Program Litigation, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I.    INTRODUCTION

Plaintiff Nicholas L. challenges Defendant Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] Martin O'Malley is now serving as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

1

Plaintiff filed for Title II disability benefits on May 20, 2020, alleging a disability onset date of September 28, 2018. Tr. 11. Social Security denied his initial application on August 27, 2020, and upon reconsideration on November 19, 2020. *Id.* Plaintiff had two video hearings scheduled in 2021 that were postponed because of technical difficulties. *Id.* The administrative law judge (ALJ) held a third hearing scheduled for February 24, 2022. Tr. 323. The ALJ issued an unfavorable decision on April 14, 2022. Tr. 8. On May 24, 2022, Plaintiff filed a timely Request for Review of the ALJ's unfavorable decision. Tr. 5. On March 30, 2023, the Appeals Council denied review stating that the reasons identified in the appeal brief did not provide a basis for changing the ALJ's decision. Tr. 1. On May 17, 2023, Plaintiff filed a complaint with the U.S. District Court, Minnesota, asserting multiple legal errors by the ALJ and requesting a remand for further proceedings. ECF Doc. 1.

Plaintiff filed a motion for summary judgment, ECF No. 23, requesting that the Court reverse the Commissioner's decision and order immediate benefits or remand with instructions for further review. Defendant filed a brief in opposition, ECF No. 26. Plaintiff then filed a reply, ECF No. 32.

For the reasons set forth below, the Court denies Plaintiff's request for relief, and affirms the Commissioner's decision.

## II.    PROCESS FOR REVIEW

Congress has prescribed the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a person disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

## A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 416.1407-416.1409. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an ALJ. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 416.1429.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairment, residual functional capacity ("RFC"), age, education, and work experience. See 20 C.F.R. § 416.920(a)(4); see also *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process by which a Commissioner of Social Security must evaluate a claim:

> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and

(5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).

## B.   Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 416.1467-416.1482. The decision of the Appeals Council — or, if the request for review by the Appeals Council is denied, the decision of the ALJ — is final and binding on the claimant, unless the matter is appealed to Federal District Court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. In this case, the Appeals Council denied Plaintiff's request for review on March 30, 2023, see Tr. at 4–6, and he initiated this action on May 17, 2023.

## C.   Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. The Court must review the administrative record as a whole and consider:

> (1) The credibility findings made by the ALJ.
> (2) The plaintiff's vocational factors.
> (3) The medical evidence from treating and consulting physicians.
> (4) The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
> (5) Any corroboration by third parties of the plaintiff's impairments.
> (6) The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (quoting *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989)).

The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *Buckner v. Apfel*, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Buckner*, 213 F.3d at 1012 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 416.912(a); *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated that he cannot perform prior work because of a disability, the burden of proof then shifts to the Commissioner to show that the claimant retains the RFC to engage in other substantial, gainful activity. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

### III.   ALJ DECISION
#### A. ALJ Findings and Conclusions

The ALJ made the following determinations as part of the five-step disability evaluation process:

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 28, 2018, the alleged onset date. Tr. 11,14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral hand gouty arthritis/finger tendon tophi; gout; and right knee meniscus tear. Tr. 14.

At step three, the ALJ determined that none of these severe impairments, whether individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14.

At step four, after a review of the medical record, the ALJ found that Plaintiff had the RFC,

> to perform sedentary work—lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools—except no ladder, rope, or scaffold climbing. No foot pedal operations with the bilateral lower extremities. No balancing. No limitations on stooping. No kneeling, crouching, or crawling. No exposure to hazards such as the operations of dangerous moving machinery, and unprotected heights. Avoid exposure to extremes of cold and heat. Avoid concentrated exposure to wet floor.

Tr. 16. (Emphasis added.)

At step five, the ALJ found that Plaintiff had previously worked as a credit card clerk, a data entry clerk, and a telephone quotation clerk. Tr. 27. The ALJ further found that Plaintiff was capable of performing two of his previous jobs—credit card clerk and telephone quotation clerk—because neither type of work required the performance of work-related activities precluded by Plaintiff's RFC. Tr. 28. This finding was based on the testimony of vocational expert ("VE") Ms. Ryan, who was asked by the ALJ at the administrative hearing whether jobs exist in the national economy for a hypothetical claimant with the RFC described above. Ms. Ryan testified that Plaintiff could not perform

his past work as a data entry clerk because of the constant fingering required to perform the job; Plaintiff, however, could still perform the necessary tasks to work as a credit card clerk or telephone quotation clerk. After gathering testimony from the VE and a thorough review of the record, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 28. Additionally, the ALJ found that the record did not support other hypothetical questions presented to the VE, or that the record supported limiting Plaintiff to crutches, a wheeled walker, or the other limitations found by Plaintiff's treating Podiatrist, Dr. Vang. Tr. 24–26. Thus, the ALJ concluded that Plaintiff was not disabled.

### B. Standard of Review

There are two bases in which a District court reviews the decision of an Administrative Law Judge: (1) whether the decisions comply with the relevant legal standards and (2) whether the decisions are supported by substantial evidence. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Legal error comes in three forms: (1) an error in the application of legal procedure; (2) an error in the application of legal standards; and (3) an error in the application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). Legal conclusions of the Commissioner are reviewed de novo; courts do not owe any deference to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692.

Substantial evidence is a term of art in administrative law. It does not require an overwhelming amount of evidence. Rather, substantial evidence is simply more than a

scintilla, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). There must be enough relevant evidence that a reasonable mind might accept it as adequate to support the conclusion. *Id.* A court determines whether an ALJ's decision is supported by substantial evidence by looking at the record as a whole. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). Just because a court may have reached a different conclusion than the ALJ does not mean that substantial evidence does not support the decision. *Id. Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004) (stating that courts should not substitute their own judgment or findings of fact for the ALJ's). Courts should not reverse an ALJ simply because they would have reached a different conclusion. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

Furthermore, courts are to "defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quotation omitted).

### C. Plaintiff's Arguments

Plaintiff makes two legal error arguments that require this case be remanded with disability benefits being immediately awarded or with instructions to the ALJ or the Appeals Council for further review. First, Plaintiff argues that the ALJ committed legal error when they failed to address adequately an ME's and a VE's testimony about absenteeism. Second, the Appeals Council committed legal error when they concluded that Dr. Como's letter, indicating that Plaintiff required the use of a walker, did not relate back

8

to the period covered by the ALJ's decision and therefore could not be considered in their review of the ALJ's decision.

### 1. The ALJ did not commit legal error when he did not address the ME's and VE's testimony or the persuasiveness of their testimony

The ALJ did not commit legal error when he failed to explain why he rejected the ME's and VE's testimony on absenteeism nor when the ALJ failed to describe the persuasiveness or lack of persuasiveness of the ME's and VE's testimony on absenteeism. First, when looking at the record a whole, we find that substantial evidence supports the ALJ's conclusions regarding the RFC. Second, we conclude that the ALJ met the standard for reviewing medical evidence and determining the persuasiveness of it. Third, the cases cited by Plaintiff for the argument that remand is required when an ALJ does not explicitly review the ME's and VE's testimony on absenteeism or explicitly determine the persuasiveness of the absenteeism testimony are distinguishable from this case.

A court's review of ALJ decisions for legal error is de novo. *Brueggemann*, 348 F.3d at 692. The ALJ determines a claimant's RFC based on all the relevant evidence: medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Smith v. Astrue*, 770 F. Supp. 2d 1002, 1011 (8th Cir. 2011) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217–18 (8th Cir. 2001)). Social Security rules and guidance direct ALJs on how to consider medical evaluations. SSR 16-3p "policy interpretation," para. 2. B., "Medical Sources" (stating that ALJs must consider the findings from medical sources, but they are not bound by them). Finally, the claimant has the burden

to prove his/her impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

First, Plaintiff is correct, the ALJ did not directly address the testimony provided by the medical expert ("ME"), Dr. Kendrick ("Kendrick"), Tr. 54–57, nor the VE, Tr. 76–78, regarding the effect of repeated absentees from work, or why the ALJ found their testimony on absenteeism unpersuasive. If we look at the record as a whole, however, we can see that substantial evidence supports the ALJ's RFC conclusions. Therefore, the ALJ is not required to explicitly address the absenteeism issue. *Smith v. Astrue*, 770 F. Supp. 2d 1002, 1010 (8th Cir. 2011) (citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) ("The ALJ may reject the conclusions of any medical expert . . . if they are inconsistent with the record as a whole.")).

Substantial evidence does support the ALJ's decision that Plaintiff had the symptoms but not the severity and was able to perform past relevant work as a credit card clerk and telephone quotation clerk. In 2017, Plaintiff went to the earliest appointment this Court could find on the record. At this appointment Plaintiff stated he suffered from gout for ten plus years but that this was the first symptom flare up in five months. Tr. 17 (*citing* Tr. 553, 576). At this appointment, the Podiatrist scheduled Plaintiff for lab work to measure the level of uric acid. The ALJ and this Court could find no record that Plaintiff completed this lab work. Tr. 18. Nearly a year later, on September 28, 2018, Plaintiff claims his disability began. Tr. 17. Yet, Plaintiff did not attend his first appointment for a flare up in his symptoms until nearly one year after the claimed disability onset. Tr. 18. The Podiatrist did note that the symptoms appeared to have worsened and recommended that

Plaintiff use a heel lift to fix his gait and start taking Meloxicam. Tr. 554. The ALJ noted that he found no record of the Plaintiff starting Meloxicam or obtaining a heel lift. Tr. 18. A month later, Plaintiff visited his physician who scheduled an MRI, which the ALJ noted, showed a "[l]arge soft tissue mass within the joint space with associated multifocal erosive changes most likely represent[ing] gout" and a "[c]omplex tearing of the anterior horn of the medial meniscus." Tr. 18 (*citing* Tr. 578). At a follow up appointment, the physician prescribed allopurinol to treat the symptoms and referred Plaintiff to orthopedics, but the ALJ found no record of Plaintiff seeking treatment from orthopedics.

Plaintiff did not seek treatment for his gout until six months later in April 2020. This appointment was not because of worsening symptoms, but, rather Plaintiff wanted to get a job restriction letter from his podiatrist. Tr. 19 (*citing* Tr. 555). During this time, Plaintiff worked two jobs, one as a cashier from October 2019 through January 2020, Tr. 407, and the other working on an assembly line, which he got through a temp agency from January 2020 until March 2020. *Id.*

Four months later, in August 2020, Plaintiff underwent an evaluation with a Consultative Physical Examiner. At this appointment, Plaintiff stated he had not been taking gout medication for nearly a year. Tr. 563. In February 2021, Plaintiff returned to his podiatrist where he complained of worsening symptoms. Tr. 581. Five months later, in June 2021, Plaintiff saw his physician and reported for the first time that he needed a cane. Tr. 20 (*citing* Tr. 595). Plaintiff refused to get blood draws done. Tr. 595. In July 2021, Plaintiff followed up with his podiatrist, where he reported using a cane or crutches and requested a walker with wheels. Tr. 21 (*citing* Tr. 598). Finally, in November 2021,

Plaintiff once again saw a primary care physician. At this appointment, Plaintiff presented in a wheelchair for the first time. Tr. 21 (*citing* Tr. 606). It was also at this appointment that Plaintiff stated he had been using crutches for nearly a year. Tr. 605. Plaintiff told the physician he was "going through disability and my attorney wants us to see him as the foot doctor has conditions." *Id.* The physician encouraged Plaintiff to see an orthopedic surgeon for possible fixes and suggested that Plaintiff get some labs done. Tr. 606. Plaintiff refused the lab tests because he hates blood draws. *Id.*

Throughout the analysis the ALJ was even handed, noting the symptoms and complaints of the plaintiff and noting the facts that did not corroborate Plaintiff's claimed disability. Tr.18–21. This medical history shows that Plaintiff sought out minimal treatment for his symptoms. While the record indicates that Plaintiff did not have health insurance, Tr. 527, the ALJ explained why he found that unpersuasive: "There was no evidence of [Plaintiff] seeking out alternative low-cost medical services or being denied services because of an inability to afford care or lack of health insurance coverage." Tr. 21. The ALJ then explained that the record showed the lack of treatment stemmed more from Plaintiff's decision not to obtain care by refusing to get lab tests done and not following through with visits to orthopedics. Tr. 21. The ALJ continued to explain why he believed Plaintiff's claimed ongoing need for ambulatory devices was not supported by the record. Tr.22–23. The ALJ also devoted time to explain why he found specific medical findings unpersuasive noting that they were "vague"; "based on Plaintiff's subjective complaints"; or that he "found no explanation why the podiatrist suddenly opined [Plaintiff] required an assistive device." Tr. 22. The ALJ also showed that record revealed Plaintiff was living

independently, caring for himself, and driving himself. Tr. 23 (*citing* Tr. 436–43; 474–81; 605). From this thorough examination the ALJ concluded that Plaintiff had his symptoms, but the record did not show that these symptoms flared up for consecutive twelve-month periods which would support a finding of disability. Tr. 23. Additionally, after reviewing the testimony from the ME, this court concludes that it fits in with the record as a whole and its support of the ALJ's conclusions. The ME, Kendrick's, testimony shows that his answer is intended not to say the absences will happen but that in the realm of possible events the absences might happen. Tr. 54–57. The ALJ addressed the symptoms and impairments suffered by Plaintiff thoroughly. As can be seen from the record as a whole, Plaintiff is able to perform past relevant work as a credit card clerk and telephone quotation clerk.

Second, the ALJ did not make a legal error by not explicitly addressing the persuasiveness of the absenteeism testimony from the ME and VE. In considering the medical sources, ALJs are directed to articulate in their decision how persuasive they find the medical opinions and medical findings in the case. 20 C.F.R. § 404.1520c(b). These evaluations must be more than just boilerplate or blanket statements. *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). In this evaluation, ALJs are not required to adopt the entirety of a medical opinion; rather, they may find parts of the evaluation persuasive and other parts unpersuasive. *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all of a medical opinion."). The ALJ did not explicitly address the absenteeism testimony or its persuasiveness by the ME or VE, but the ALJ is not required to address explicitly every portion of testimony. *Lucus*, 960 F.3d at 1069. The

ALJ did not provide merely boilerplate language in discussing the record but provided thorough explanations and specific citations to the record. He also set out an explanation for how persuasive he found each ME, including Kendrick. Tr. 24. This language was not merely boilerplate language. The ALJ delved into the testimony provided by Kendrick, his relevant background, how the testimony fit in with the record as a whole. This is the same treatment the ALJ provided to the VE's testimony. The ALJ explained why he thought the VE's testimony was persuasive and why its deviation from Dictionary of Occupation and its companion, Selected Characteristics of Occupations were reasonable. Tr. 28. The ALJ met the legal standard for laying out the persuasiveness of the ME and VE testimony.

Third, Plaintiff relies heavily on two cases for his argument that an ALJ is required to review the testimony of absenteeism and discuss its persuasiveness: *Smith v. Astrue*, 770 F. Supp. 2d 1002 (2011) and *Evans v. Berryhill*, No. 16-2628 BRT, 2017 WL 3836047 (D. Minn. Aug. 31, 2017). These cases are distinguishable from our present case. In *Smith*, the court was not determining whether it was a legal error for the ALJ not to address a portion of an ME or VE testimony in the RFC analysis. Rather, the issue was whether there was substantial evidence supporting the ALJ's decision that the claimant's migraines were not severe. *Smith*, 770 F. Supp. 2d at 1009–10 ("The Court cannot say that there is substantial evidence to support the ALJ's non-severe finding."). The court then turns to a brief analysis on whether this mistake was a harmless error. It is in this section that the court discusses the ALJ's failure to consider work interruption caused by the migraine. The court concludes that, based on the record before them, they cannot say the error was harmless because the ALJ did not consider the effects of work interruptions caused by the migraines.

The court did not, as Plaintiff argues, remand to the ALJ simply the ALJ failed to account for work absentees. *Smith* was remanded because there was substantial evidence supporting the conclusion of disability. The only relevance that absenteeism has to *Smith* is that the ALJ's failure to address it led the Court to be unable to determine whether the ALJ's decision was harmless error. In our case, however, substantial evidence supports the ALJ's conclusions.

In *Evans*, the court determined that the substantial evidence did not support the ALJ's determination of no disability before turning to the RFC and the absenteeism issue. 2017 WL 3836047, at *9. In *Evans*, the court rejected the ALJ's determination that the treating physician's testimony was unpersuasive because it was not supported by substantial evidence in the record. The ALJ did not discuss the absenteeism testimony, finding testimony on the whole unpersuasive, citing specifically the fact that the claimant did not take the prescribed medication. *Id.* The court concluded that the ALJ's rejection of the caring physician's opinion on the expected absences based on claimant's failure to take her prescription was improper. *Id.* at 10 (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) ("[A] mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, [is] neither willful nor without a justifiable excuse.")). The court in *Evans* did not remand the case to the ALJ simply because there was no discussion of the absenteeism. Rather, the case was remanded because the reasons for not reviewing the absenteeism were unavailing. This case does not support a blanket rule for remanding a case simply because an ALJ did not discuss absenteeism testimony.

In our case, the ALJ did not review the absenteeism issue, but there is substantial evidence on the record showing how persuasive the ALJ found the ME and VE. Nothing on the record shows that the ALJ considered evidence that he should not have considered when reaching his conclusion as in *Evans*. For these reasons, this Court distinguishes the cases cited by Plaintiff and concludes that there is substantial evidence to support the ALJ's decision and that the ALJ's evaluation of the persuasiveness of the ME and VE's testimony met the required legal standard.

### 2. The Appeals Council did not Commit Legal Error When They Failed to Consider the Letter of Dr. Como in Their Review of The ALJ's Decision

Plaintiff argues the Appeals Council erred when they refused to review the ALJ's decision. He contends that the Appeals Council improperly denied review because he submitted additional evidence that would reasonably change the outcome of the decision. Pl.'s Br. at 24. Defendant responds that, even when considering the additional evidence, substantial evidence still supports the ALJ's decision. Def.'s Br. at 21.

Plaintiff's additional evidence is a medical examination attached to a written letter from Plaintiff's orthopedic doctor, Dr. Como. Plaintiff refers to this additional evidence primarily as Dr. Como's Letter or Dr. Como's statement throughout his brief, Pl.'s Br. 24–26, but the additional evidence is more than just Dr. Como's letter.[2] In this letter, Dr. Como states that Plaintiff "needs to use a rolling walker to stably perform his ADLs/IADLs." Tr. 610. The Appeals Council stated that,

---

[2] Due to the Plaintiff's primary description of this additional evidence as a letter, this Court will refer to the additional evidence as a letter although it includes the medical examination by Dr. Como as well.

> [Plaintiff] submitted medical records from [Dr. Como] dated May 31, 2022 (10 pages). The Administrative Law Judge decided your case through April 14, 2022. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before April 14, 2022.

Tr. 2.

Under the Social Security regulations,

> [t]he Appeals Council *will review* a case at a party's request . . . if . . . the Appeals Council receives additional evidence that is [1] new, [2] material, *and* [3] relates to the period on or before the date of the hearing decision, *and* [4] there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a) (emphasis added). Because the regulation is phrased in the conjunctive, each of the four requirements must be met for the Appeals Council to review a case. *See Thor v. Berryhill*, No. 18-cv-538 (NEB/KMM), 2018 WL 7141873, at *5 (D. Minn. Dec. 13, 2018) (noting that, because "and" is conjunctive, all four requirements must be met), *R&R accepted* (Jan. 30, 2019).

Whether evidence is new, material, and relates back to the period before the ALJ's decision are questions of law, which are reviewed de novo. *Box v. Shalaha*, 52 F.3d 168, 171 (8th Cir. 1995). Evidence is "new" when it is not merely cumulative of other evidence in the record, and evidence is "material" when it is relevant and when it relates to the period the benefits were denied. *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). Evidence is not material when it merely describes an after-acquired condition or a post-decision deterioration of a preexisting condition. *Id.* at 1070; *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997).

Consequently, when additional evidence is submitted to the appeals council, "[i]f the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). But if "the Appeals Council considers the new evidence but declines to review the case, [the reviewing court] determine[s] whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Id.*

It is somewhat unclear whether the Appeals Council considered the letter from Dr. Como that Plaintiff submitted as additional evidence. But under either standard from *Nelson*, a remand is not required here. If the Appeals Council did not consider the letter, a remand would be required only if the letter presented new and material evidence that related to the adjudicative period. *See Nelson*, 966 F.2d at 366.

First, the additional evidence does not relate to the time period before the date of the hearing decision. The ALJ issued his decision on April 14, 2022. Tr. 8. Dr. Como's letter and the medical visit on which the letter is based are date May 31, 2022, Tr. 610–11, which is after the date of the ALJ's decision. More importantly, the additional evidence does not provide substantive evidence on Plaintiff's condition before the date of the ALJ's decision. The entirety of Dr. Como's letter reads:

> To whom it may concern:
>
> [Plaintiff] was seen in clinic *today*. He has severe tophaceous gout with right knee joint destruction and ankylosis. He needs to use a rolling walker to stabily [sic] perform his ADLs/IADLs. Please do not hesitate to call [phone number] if

you have any further questions. Just ask to speak to the triage
nurse.

Sincerely,

[Dr. Como]

Tr. 610 (emphasis added). Dr. Como's letter only addresses Plaintiff's condition on May
31, 2022, which is after the date of the ALJ's decision. Admittedly, the attached medical
record includes the sentence: "Since the last visit, [Plaintiff] notes no new problems or
concerns, no recent [emergency room] visit, no recent specialty visit, and no recent
hospitalization." Tr. 611. But importantly, this provides no analysis of Plaintiff's condition
during that time. And this is included in the "History of Present Illness" section, rather than
in the "Impression & Recommendations" section of the report. Tr. 611–12. Moreover, the
rest of the medical report details Plaintiff's condition only on May 31, 2022. Tr. 611–19.
Because the medical report only provides analysis of Plaintiff's condition on May 31, 2022,
the report does not relate to the time period before April 22, 2022.

Second, the letter is not new because it is cumulative of other evidence in the record.
Dr. Como's letter is a self-written paragraph, and adds very little additional evidence, other
than stating that Plaintiff should use a rolling walker as of May 31, 2022. Tr. 610. In
addition, the medical records from Plaintiff's visit with Dr. Como in May 2022 are
strikingly similar to medical records from Plaintiff's visit with Dr. Como on December 28,
2021, which was included in the record before the ALJ. *Compare* Tr. 605–07 *with* Tr. 611–
19. They both include the symptoms Plaintiff experienced on those dates, and the medical
condition, gout, as well as any medication Plaintiff was taking. *Id.* The May 2022 records

do include lab tests from blood draws done on the Plaintiff, Tr. 614–19, but this difference is for all practical matters di minimis; it is not enough new information to not be cumulative. In short, the letter is cumulative to other evidence in the record, and as a result, does not add new evidence.[3]

Third, the letter is not material because it is not relevant. Plaintiff focuses on the fact that the additional evidence shows that he met a critical element in step 3 of the disability assessment, i.e. the medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device. 20 C.F.R. 404 Subpart P App. 1 § 1.18(d)(1). Plaintiff states that this was the only listing criterion in dispute, i.e. the need for a walker or crutch. Pl.'s Br. 26, 28. The letter from Dr. Como, however, was dated after the ALJ's decision. Tr. 610. And although "[t]he timing of the examination is not dispositive of whether evidence is material," additional evidence is material only when "it relates to the claimant's condition on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990). As discussed above, Dr. Como's May 2022 letter does not relate to Plaintiff's condition before the date of the ALJ's decision.

Plaintiff contends that Dr. Como's letter is like the additional evidence submitted in *Williams*, which, despite being dated after the ALJ's decision, was material because it

---

[3] For these same reasons, even if the Appeals Council had considered the letter from Dr. Como as additional evidence, substantial evidence still supports the ALJ's decision. Therefore, a remand is not required under the second standard from *Nelson*. 966 F.2d at 366 ("[If] the Appeals Council considers the new evidence but declines to review the case, [the reviewing court] determine[s] whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.").

stated that "this patient has suffered from chronic mental illness since her early adulthood." *Id.* But Dr. Como's May 2022 letter does not refer to Plaintiff's condition on any date except for May 31, 2022. Tr. 610–19. And, as noted above, the one reference to Plaintiff's condition between doctor visits in the medical records attached to the letter, Tr. 611, does not qualify as relating back. Because Dr. Como's letter was not relevant to the time period under adjudication by the ALJ, the additional evidence submitted by Plaintiff was not material.

In sum, under either standard from *Nelson*, a remand is not required here. If the Appeals Council did not consider the letter from Dr. Como, it was justified in doing so because the letter did not relate to the time period under adjudication and was neither new nor material. *See Nelson*, 966 F.2d at 366 ("If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material."); *see also* 20 C.F.R. 404.970(a)(5) (stating that the Appeals Council will grant review if additional evidence is submitted that is "new, material, and relates to the time period" using the conjunctive "and"). And if the Appeals Council did consider the letter from Dr. Como, substantial evidence still supports the ALJ's determination that Plaintiff was not disabled.

## IV.  CONCLUSION

Accordingly, based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's request for relief, ECF No. 23, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 26, is **GRANTED**.

3.  The Commissioner's decision is **AFFIRMED.**

4.  This matter is **DISMISSED.**

LET JUDGMENT BE ENTERED ACCORDINGLY.


Date: September 30, 2024                        */s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Nicholas L. v. O'Malley*
                                                Case No. 23-cv-1399 (TNL)